**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| ALMA MARIE CAMPBELL BASQUEZ, | CASE NO. 3:21-CV-01777-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| | UNITED STATES DISTRICT JUDGE |
| v. | |
| | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | CARMEN E. HENDERSON |
| Defendant, | **REPORT AND RECOMMENDATION** |

I. **Introduction**

Plaintiff, Alma Marie Campbell Basquez ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

II. **Procedural History**

On August 1, 2019, Claimant filed an application for DIB, alleging a disability onset date of February 2, 2019. (ECF No. 6, PageID #: 122). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 6, PageID #: 163). On June 16, 2020, an ALJ held a hearing that was not recorded due to technical difficulties. (ECF No. 6, PageID #: 79). The ALJ held a second hearing on October 6, 2020, during which Claimant, represented by counsel, and an impartial vocational expert

1

testified. (ECF No. 6, PageID #: 97). On October 20, 2020, the ALJ issued a written decision finding Claimant was not disabled. (ECF No. 6, PageID #: 76). The ALJ's decision became final on July 20, 2021, when the Appeals Council declined further review. (ECF No. 6, PageID #: 49).

On September 15, 2021, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignments of error:

> (1) The ALJ considered the wrong type of evidence in evaluating the Plaintiff's migraines as the ALJ relied on neurological examinations as opposed to medication changes.
>
> (2) The ALJ erred in not taking into consideration the severity of the Plaintiff's migraines and mental health conditions when determining her residual functional capacity and their impact on her ability to remain on task during a workday.
>
> (3) The ALJ erred by finding the Plaintiff to have the requirement to wear dark glasses when working outdoors in bright sunlight or under fluorescent lighting, as there is nothing in the evidence to indicate this would be of any benefit to the Plaintiff.

(ECF No. 10 at 2).

### III. Background[1]

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> At hearing, the claimant testified that she is no longer able to work fulltime due to migraine headaches. She explained she lost her prior job due to headaches, which would cause her to miss work two days per week. The claimant testified that she has had migraines since she was 13 years old but that they have worsened in recent years. The claimant explained she has an average of three

---

[1] The Court discusses only the impairments relevant to Claimant's brief.

> migraines per week and up to 15 migraine headaches per month. She explained when she has a migraine headache[] she stays in bed and in dark areas. The claimant alleged she spends 12 to 14 hours in bed in the darkness on average in a day. She also testified that she has tension headaches, which are not as severe as migraines, but that occur daily. On a daily basis, the claimant testified, when she has a headache, she stays at home, but she will do light work around the house. She admitted she gets household chores done with a headache, but she is unable to do any chores when she has a migraine. The claimant explained she only leaves the house once weekly to go to the grocery shopping with her husband due to concerns that she will develop a migraine when she is out.
>
> The claimant further alleged she has panic attacks and depression. The claimant reported that she is on medications for her symptoms, which do help. She alleged they are somewhat related to her migraine condition, anxiety with going out or developing migraines. She also reported she has memory issues, so she sets alarms to remind her to take medications and for appointments.

(ECF No. 6, PageID #: 85–86).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> [T]he record supports the claimant has a history of migraine headaches. (3F). The record supports for treatment of her migraine headaches she participated in neurology treatment. (3F). Specifically, at her appointment on February 6, 2019, it was noted that she had been doing well in November 2018, but she alleged in December 2018 her headaches had increased. (3F/19). The claimant described her migraines as primarily located in the bifrontal and bitemporal areas and alleged the headaches are pounding and throbbing in nature. (Id.). At her neurology appointment in February 2019, the claimant was noted to report relief with Imitrex injections, but it was noted that she is limited to six injections monthly. (3F/19-22). She was thus trialed on an increase of Aimovig, Ajovy, Fioricet, and amitriptyline. (Id.).
>
> At her appointment in August 2019, the claimant reported no relief with Ajovy or Fioricet. (6F/78-91). She reported that she was continuing to get 2 to 3 migraine headaches per week. (Id.). She also alleged she had continued to have daily pressure headaches. (Id.). A neurology exam performed showed normal findings, normal bulk and strength, normal muscle tone, normal sensation,

and normal reflexes. (Id.). The claimant was continued on amitriptyline and Imitrex and she was also started on a trial of verapamil and Imitrex tablets (in addition to the injections). (Id.). Yet, at her follow-up appointment in December 2019, the claimant reported no success with verapamil, so she had stopped taking it. (8F/1-14). She reported amitriptyline did help her sleep and the Imitrex oral did provide some relief, although she explained the injections work better. (Id.). The record supports the amitriptyline dosage was increased. (Id.). She was noted to have had a normal neurological examination. (Id.).

On February 12, 2020, the claimant again presented for neurology treatment. (8F/24). The claimant reported that the increase in amitriptyline had significantly helped her sleep, but she had not seen any improvement in her headaches. (Id.). She reports having a migraine headache 4 out of 7 days of the week. (Id.). The treatment notes also support that the claimant had relief with Aimovig in the past, but due to insurance issues, it had been ceased; however, due to her having new insurance, she was able to restart Aimovig in February 2020. (Id.). She was also continued on Imitrex and amitriptyline. (Id.).

Yet, at her most recent neurology visit of record, on June 10, 2020, the claimant reported that she had not had any significant change with Aimovig, despite three doses. (12F/1-15). She stated that she continues to have daily achy headaches and a migraine 3 to 4 days of the week. (Id.). The claimant was thus changed to a new medication, Emgality, and continued on her other medications. (Id.). The claimant testified at the hearing that Emgality did not provide significant relief of symptoms. (Id.). No further treatment is noted for migraine headaches including any form of emergency or inpatient treatment. . . .

In addition to the claimant's severe physical impairments, the claimant has also been assessed with the severe mental impairments of adjustment reaction with anxiety and depression. (3F, 7F, 9F, and 11F). For treatment of these impairments, the record reflects the claimant's primary care physicians have prescribed medications to treat her depression and anxiety throughout the adjudicated period. (3F, 9F, and 11F). Specifically, the record supports the claimant was prescribed Wellbutrin, Buspar, and Celexa. (3F/14). At her appointment in May 2019, the claimant reported that her anxiety symptoms were controlled and her depression symptoms were noted to be stable; thus, her medications were continued. (3F/9). On August 13, 2019, the claimant was noted to have controlled anxiety symptoms and her

4

> medications were continued. (3F/4-7).
>
> However, at her next appointment, on November 12, 2019, the claimant reported her anxiety and depression symptoms had not been controlled. (9F/2-7). Thus, the claimant's medications were adjusted, she was continued on Celexa and the Wellbutrin was increased in dosage. (Id.). At her follow-up appointment on February 25, 2020, the claimant reported her anxiety symptoms were controlled and she was continued on the current medication treatment plan. (9F/18-24). At follow-up appointments in May 2020 and August 2020, the claimant reported her depression and anxiety symptoms had improved and were controlled with medications. (11F/1-10). No further treatment was advised and she indicated that overall she was satisfied with the course of treatment. (Id.).

(ECF No. 6, PageID #: 86–88).

### C. Opinion Evidence at Issue

On September 25, 2019, Jerome Zake, Ph.D., performed a consultative psychological examination. He concluded that Claimant suffered from moderate to severe symptoms of an adjustment disorder with anxiety and persistent depressive disorder. (ECF No. 6, PageID #: 626). Dr. Zake opined that Claimant "evidenced adequate understanding and recall," but her "ability to carry out instructions may be impaired by her anxiety." (ECF No. 6, PageID #: 627). He noted that Claimant evidenced difficulty concentrating. (ECF No. 6, PageID #: 627). However, Claimant "evidenced adequately developed persistence and pace." (ECF No. 6, PageID #: 627). Dr. Zake suggested that Claimant's anxiety may interfere with her interactions with others, and she has increased anxiety and dysphoria "when confronted with stress." (ECF No. 6, PageID #: 627).

> The ALJ considered this opinion and found it "generally persuasive." She explained:
>
>> Dr. Zake's assessment is overly broad and speculative in nature, as he does not provide specific functional limitations. However, his general findings that the claimant has limitations with regard to carrying out tasks due to anxiety, interacting with others, and

5

reacting to stress are all generally consistent with the claimant's testimony regarding anxiety and are supported by Dr. Zake's objective findings on exam.

(ECF No. 5, PageID #: 88).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: migraine without status migrainosus, not intractable; depression; adjustment reaction with anxiety; brachycardia; and pacemaker with history of supraventricular tachycardia. (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: never climb ladders, ropes, or scaffolds; never be exposed to concentrated levels of fumes, odors, dusts, gases, poor ventilation, or other pulmonary irritants; and never be exposed to concentrated level[s of] vibration; can work in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations. She must be permitted to wear dark glasses when working outdoors in bright sunlight or under fluorescent lighting. She can perform simple, routine, and repetitive tasks, but not at a production rate pace (so, for example, no assembly line work); and she can respond appropriately to occasional interaction with supervisors and co-workers, but should have no interaction with the general public. She can tolerate few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work environment; any necessary changes need to occur infrequently and be adequately and easily explained.

(ECF No. 6, PageID #: 82, 84–85).

## V. Law & Analysis

### A. Standard of Review

6

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.      Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the

national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal. First, she argues that the ALJ considered the wrong type of evidence in evaluating her migraines. Second, she asserts that the ALJ erred in not taking her migraines and mental health conditions into consideration when determining her RFC. Third, Claimant suggests that the ALJ's inclusion of a requirement to wear dark glasses in certain situations was neither necessary nor supported by the medical record.

#### 1. The ALJ Properly Assessed Claimant's Migraines

Claimant argues that the ALJ improperly assessed her migraines because she relied on normal neurological examinations instead of her medication changes. She states that migraines do not always result in abnormal neurological examinations and the ALJ was required to consider other findings instead. According to Claimant, SSR 19-4p—the regulation that explains how to evaluate cases involving primary headache disorders—states that evidence of persistent headaches despite treatment can constitute medical findings establishing the presence of a medically determinable impairment. Although Claimant is correct that the ALJ can consider ineffective treatment in evaluating her headaches, it is not true that the ALJ cannot consider and rely on the objective medical evidence as well.

SSR 19-4p provides that a primary headache disorder can be established as a medically determinable impairment "by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source.]" SSR 19-4p, 2019 WL 4169635, at *5. A finding of disability cannot be based on a claimant's diagnosis or statement of symptoms alone. *Id.* at *6. The ALJ can consider the following: (1) a primary headache diagnosis; (2) an observation and detailed description of a typical headache by an acceptable medical source; (3) remarkable or unremarkable findings on laboratory tests; and (4) the claimant's response to treatment. *Id.* In determining the claimant's RFC, the ALJ considers "the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. . . . Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id.* at *8.

The ALJ appropriately considered all of the medical evidence. She discussed the effectiveness of Claimant's treatment, the normal neurology exam findings, and Claimant's subjective complaints. In concluding that Claimant's headaches and migraines were not a medically determinable impairment, the ALJ explained:

> while the claimant has medically determinable physical impairments that could reasonably cause some symptoms and limitations, the undersigned finds the allegations are broader and more restricted than is established by the medical evidence. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability. . . .
>
> [T]he record does not fully corroborate the claimant's allegations of physical health symptom severity. As discussed in detail above, the claimant's treatment records indicate that the claimant has reported ongoing migraine headaches and tension headaches, with only some relief with medication treatments. However, also as

9

>detailed above, the record supports the claimant's treatment was conservative in nature with no evidence of emergency or inpatient treatment noted.

(ECF No. 6, PageID #: 87, 89). Claimant asserts that this analysis was error because she provided sufficient evidence of persistent headaches despite treatment but the ALJ relied on normal examinations. The Commissioner responds that the ALJ properly considered Claimant's treatment and the persistence of her headaches but concluded that a conservative treatment regimen and lack of objective medical evidence did not demonstrate Claimant's alleged level of severity. The Court agrees.

The ALJ provided substantial evidence for her conclusion that Claimant's migraines did not preclude her from engaging in substantial gainful activity. The ALJ appropriately considered the objective evidence and Claimant's treatment history, as allowed by SSR 19-4p. It was proper for the ALJ to weigh both types of evidence and make a supported decision. In making her decision, the ALJ relied on the fact that there was a lack of objective evidence supporting Claimant's alleged severity and Claimant had a conservative treatment history. Both reasons are appropriate for the ALJ to consider and provide substantial evidence for her decision. *See Frankowski v. Astrue*, No. 1:12-CV-882, 2012 WL 6153399, at *7 (N.D. Ohio Nov. 14, 2012) (concluding that the ALJ did not err in failing to assign the claimant limitations regarding his migraines where he failed to identify any objective evidence establishing the severity of his migraines), *report and recommendation adopted*, No. 1:12 CV 882, 2012 WL 6152998 (N.D. Ohio Dec. 11, 2012); *McCormick v. Sec'y of Health & Hum. Servs.*, 861 F.2d 998, 1003 (6th Cir. 1988) (affirming the denial of benefits where the Claimant did not introduce objective evidence to support the severity of her alleged migraines); *Moore v. Comm'r of Soc. Sec.*, No. 2:17-CV-0144, 2018 WL 1477233, at *12 (S.D. Ohio Mar. 27, 2018) (stating the ALJ appropriately

10

considered a lack of objective evidence and conservative treatment in rejecting the claimant's alleged level of migraine severity). Moreover, the ALJ's decision was supported by two state agency medical consultants who opined that Claimant could work at the light exertional level with some limitations. The Court, thus, finds no error.

In arguing to the contrary, Claimant relies on *Hack v. Saul*, No. 5:19-CV-508-FL, 2020 WL 7391295, at *6 (E.D.N.C. Sept. 9, 2020), *report and recommendation adopted*, No. 5:19-CV-508-FL, 2020 WL 7388428 (E.D.N.C. Dec. 16, 2020). There, the court concluded that a lack of objective evidence to substantiate the severity of migraines did not provide substantial evidence to support the ALJ's decision that the claimant's migraines did not prevent her from working. *Id.* at *6–7. Claimant asserts that the same should be true here. However, *Hack* is not binding on this Court and is inconsistent with the law of this Circuit. "[T]he Sixth Circuit has affirmed the denial of benefits in cases involving complaints of migraine pain which were unsupported by objective medical evidence." *Moore*, 2018 WL 1477233, at *12 (citing *Connell v. Comm'r of Soc. Sec.*, No. 17-cv-82, 2018 WL 1250031, at *3 (S.D. Ohio Mar. 12, 2018)) (quotation marks omitted); *see also Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) ("[H]owever, the lack of objective evidence substantiating the alleged disabling headaches is what precludes the allowance of disability benefits . . . ."). Accordingly, Claimant's first argument is without merit.

### 2. The ALJ's Decision to not Include a "Time off Task" Limitation is Supported by Substantial Evidence

Claimant next argues that the ALJ erred in failing to analyze whether a "time off task" limitation was consistent with the evidence. Specifically, she asserts that she provided evidence supporting a limitation in the RFC that she would be off task 15% of the time but the ALJ did not include such a limitation. The evidence Claimant suggests she provided was her testimony that

11

she had issues with concentration, forgetfulness, and memory and that the severity of her migraines caused her to miss work. Claimant also points out that Dr. Zake opined that Claimant had difficulty concentrating. Claimant notes that the ALJ found Dr. Zake's opinion "generally persuasive" but did not include a limitation that she would be off task a certain amount of time. The ALJ's failure to explain this omission, according to Claimant, was reversible error because the VE testified that there would be no jobs available to a hypothetical individual with Claimant's RFC that would be off task more than 10% of the time. (ECF No. 6, PageID #: 118). The Commissioner responds that the ALJ appropriately chose not to include a "time off task" limitation.

The Court will first address whether the ALJ's RFC was inconsistent with Dr. Zeke's opinion. At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 CFR § 404.1520(e). The regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* § 404.1520c(a). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "It is well-established that an ALJ need not adopt all findings in a medical opinion when determining an RFC." *Fiktus v. Kihakazi*, No. 1:20CV1689, 2021 WL 5567866, at *9 (N.D. Ohio July 29, 2021) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009), *report and recommendation adopted sub nom. Fiktus v. Comm'r of Soc. Sec.*, No. 1:20-CV-01689, 2021 WL 5566805 (N.D. Ohio Nov. 29, 2021)). However, the ALJ is still required to explain why he did not adopt a

12

portion of an opinion if the RFC conflicts with it. *Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *13 (N.D. Ohio Feb. 3, 2020); *see also Stoodt v. Comm'r of Soc. Sec.*, 2022 WL 721455, at *15 (N.D. Ohio Jan. 13, 2022).

Claimant appears to argue that the ALJ's RFC was inconsistent with Dr. Zake's opinion because Dr. Zake opined that Claimant had difficulty concentrating and the ALJ found this opinion generally persuasive but the ALJ did not include a "time off task" limitation. There are two issues with this argument. First, Dr. Zake merely stated that Claimant had difficulty concentrating. He did not suggest any limitation that the ALJ did not adopt. Claimant, therefore, failed to demonstrate any inconsistency. Second, Claimant mischaracterizes the ALJ's treatment of Dr. Zake's opinion. Although the ALJ did find it "generally persuasive," she explained that the assessment was "overly broad and speculative in nature, as [Dr. Zake did] not provide specific functional limitations." (ECF No. 6, PageID #: 88). The ALJ stated that what she found persuasive was Dr. Zake's findings that Claimant "has limitations with regard to carrying out tasks due to anxiety, interacting with others, and reacting to stress." (ECF No. 6, PageID #: 88). The ALJ, then, explained why she did not find Dr. Zake's opinion fully persuasive—it was speculative and did not give specific functional limitations. *See Springer v. Comm'r of Soc. Sec.*, No. 5:19 CV 2562, 2020 WL 9259707, at *9 (N.D. Ohio Oct. 8, 2020) ("Vagueness, or the failure to propose specific functional limitations, can be a reason to discount a medical opinion.") (citing *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018)), *report and recommendation adopted,* No. 5:19-CV-2562, 2021 WL 1015944 (N.D. Ohio Mar. 17, 2021). This directly applies to Dr. Zeke's finding that Claimant would have difficulty concentrating as this statement does not provide a specific functional limitation for the ALJ to adopt. Claimant does not argue that the ALJ erred in his treatment of the opinion. Thus, not only did Claimant fail

13

to demonstrate that the ALJ's RFC is inconsistent with Dr. Zake's opinion, but also the ALJ explained why she did not find that part of Dr. Zake's opinion persuasive. The Court finds no error.

Next, the Court will consider whether it was appropriate for the ALJ to exclude a "time off task" limitation based on the evidence Claimant put forth. Claimant points to evidence of her testimony that she had issues with concentration, forgetfulness, and memory and that the severity of her migraines caused her to miss work to support her conclusion that the ALJ should have included a "time off task" limitation. Notably, both pieces of evidence are Claimant's subjective allegations. In her decision, the ALJ acknowledged that Claimant alleged difficulty concentrating. The ALJ, however, concluded that despite these allegations of difficulty concentrating, Claimant had only a moderate limitation in the domain of concentrating, persisting, and maintaining pace. The ALJ stated:

> Here the record supports the claimant reported difficulty with focus and concentration related to pain and anxiety symptoms. (7F and by testimony). Yet, the claimant reported on days when she did not have migraine headaches, she had the ability to focus sufficient to complete household chores. (Id.). She also admitted to the consultative examiner that she did crafts and watched TV. (Id.). Therefore, the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is fair in this area.

(ECF No. 6, PageID #: 83). Thus, it is clear that the ALJ concluded that she did not fully credit Claimant's concentration allegations because she performed activities inconsistent with such allegations. Additionally, when discussing Claimant's subjective allegations regarding her mental impairments, the ALJ again stated:

> Specifically, the claimant's allegations that she cannot perform work is inconsistent with the fact that throughout the adjudicated period she performed a variety of activities, such as completing personal care tasks, some cooking and shopping, watching

14

>     television, doing crafts, and spending time with her grandchildren.
>     (7F and by testimony).

(ECF No. 6, PageID #: 89).

Claimant argues that the ALJ erred in her reasoning because Claimant testified that she could perform such activities when she has a headache but not when she has a migraine. Claimant additionally argues that the ALJ erred by relying on Claimant's activities to justify her ability to work. The Commissioner does not specifically respond to this argument but asserts that the ALJ's decision not to include a "time off task" limitation was supported by the state agency psychological consultants' opinions. Indeed, two state agency psychological consultants reviewed the entire record and suggested an RFC consistent with the ALJ's RFC. (ECF No. 6, PageID #: 137). The ALJ found these opinions "generally persuasive." (ECF No. 6, PageID #: 88–89). She stated that they were internally consistent and well supported by the medical record. (ECF No. 6, PageID #: 88–89). Thus, the ALJ's opinion was not supported by Claimant's activities alone, but also by state agency reviewers. "State Agency opinions may constitute substantial evidence supporting an ALJ's decision." *Hefflin ex rel. LDS v. Kijakazi*, No. 1:20-CV-01414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases). The Court finds no error. Moreover, Claimant fails to point to any opinion that indicates that she would be off task 15% of the time as she suggests. Even Dr. Zake's opinion, discussed above, stated merely that she had difficulty concentrating. There is nothing to suggest that difficulty concentrating would amount to being off task 15% of the time or even 10% of the time. Accordingly, the Claimant's second argument is without merit.

    3.    **The Inclusion of an Additional Limitation did not Harm Claimant**

Finally, Claimant argues that the ALJ erred in including the following limitation in her RFC: "[Claimant] must be permitted to wear dark glasses when working outdoors in bright

15

sunlight or under fluorescent lighting." (ECF No. 6, PageID#: 84). Claimant asserts that there was nothing in the record that suggests that dark glasses will be beneficial to Claimant or allow her to work in the midst of a migraine. The ALJ's inclusion of such a limitation, then, amounted to the ALJ "playing doctor." (ECF No. 10 at 15). The Commissioner responds that this limitation was included in response to Claimant's alleged sensitivity to light and Claimant has not demonstrated that this limitation harms her in any way. The Court agrees.

As an initial matter, the Court notes that Claimant testified that she spends most of her time in the dark because bright light bothers her eyes. (ECF No. 6, PageID #: 110). The ALJ explained that she included the dark glasses limitation based on this testimony and other evidence Claimant submitted after the hearing. (ECF No. 6, PageID #: 87). Although the ALJ did not rely on a medical expert in including the limitation, the Court finds no harm to Claimant. First, the limitation is not a requirement, the ALJ simply stated that the Claimant must be allowed to wear dark glasses. Claimant can choose not to wear dark glasses. Second, this limitation is more restrictive than the RFC suggested by the state agency physicians. The Court, therefore, concludes that the inclusion of the additional limitation did not harm Claimant. *See Bennett v. Colvin*, No. 1:15CV1107, 2016 WL 4430836, at *7 (N.D. Ohio Aug. 22, 2016) ("The ALJ's RFC finding was more favorable to Plaintiff than a RFC finding based on the opinion of the reviewing state agency physician. Plaintiff has failed to show how the ALJ's imposition of a more restrictive RFC constituted error."). Moreover, Claimant neither alleged nor demonstrated any harm that resulted from the addition of this limitation. Accordingly, the Court finds no reason to disturb the ALJ's decision.

**VI.     Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 20, 2022

> s/ *Carmen E. Henderson*
> CARMEN E. HENDERSON
> U.S. MAGISTRATE JUDGE

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).